Final argument of the morning is Appeal No. 22-2031, Berry v. United States. Mr. Lepp, whenever you're ready. Thank you, Your Honor. May it please the Court. My name is Don Lepp. I represent the appellate in this case, Holly Berry, who is present in the courtroom today. We're here today on an appeal from the granting of a 12b6 motion to dismiss by the Court of Federal Claims on a taking case in Oklahoma. The Court of Federal Claims determined that Ms. Berry didn't have a viable claim because the action that she was challenging, that she claimed resulted in a taking of a portion of her property, was in fact not action, but that we were challenging inaction, a failure to act. However, that is not the case, and I think if the Court read the transcript of the hearing and looked at the pleadings, what actually Ms. Berry is pointing to is the affirmative action of the United States government, the BIA, approving taking land of the Cherokee Nation into trust for the specific purpose of building a 350 square foot casino adjacent to Ms. Berry's property, which would also include enough parking for 2,100 cars. So that's actually the action that we claim resulted in the taking of a large portion of... Mr. Leff, I'm just curious, have you considered an action, a civil action against the Cherokee Nation? It has been considered, but the Cherokee Nation is a sovereign nation. It is our opinion we don't have recourse to sue the Cherokee Nation. So Ms. Berry's only option was to bring this takings claim. Certainly, if the Cherokee Nation had waived its sovereign immunity with respect to these types of claims, then she could proceed in that manner, but this is where we are. So we've got this takings claim. We're alleging that the action of taking this land into trust caused the flooding, the flooding was the direct, natural, and probable result of taking the land into trust. Well, the court... Did you ever allege in the third-party takings theory that the nation acted as the government agent in this case? No, we've never alleged that the Cherokee Nation was the specific agent. What we have raised in the briefing is that we've got a unique relationship where the tribe acts as sort of a quasi-agency of the government. Because think about this. We've got this sovereign nation. The United States government has treaties with the Cherokee Nation where it's going to protect the Cherokee Nation. It's got statutes for gaming and other things with the goal of fostering the self-sufficiency of the tribe. So basically, why the tribe isn't a legal agent, they're a different animal. They really are. The tribe is effectively, in this relationship, more like a ward, like a guardian ward situation. The reason the government took the land into trust was to protect the tribe and to help the tribe. The tribe is a sovereign nation, but it's not like England or Mexico or Canada coming over here to deer. So they're a little different animal. But in this case, specifically, the reason we believe the court erred in granting the motion to dismiss is, one, that it basically twisted our complaint and said, oh, you're actually challenging the failure to act, as if we said, OK, the government didn't come in and stop the flooding. Therefore, that's the taking. That's not the nature of our claim at all. The nature of our claim is that there's land next to Ms. Berry's that was undeveloped and owned by the Cherokee Nation. The Cherokee Nation decides to build this huge casino and change the nature of the land. And under this unique relationship between the tribe and the government, the government has to take that land that was owned in fee by the Cherokee Nation, and now the United States government owns this property, has legal title to this property. And it says, OK, tribe, go ahead and build this 350-square-foot... Can I ask you a question? Sure. OK, so my question is this. If the flooding was the direct natural cause of the U.S. government taking the land into trust, then were you aware of the taking claim as of the time that the United States took the land into trust? Is that your allegation as well? No, I don't believe at the time on the date in January 2017 when the government decided to take the land into trust immediately. No, we were not aware of the taking claim at that time. The taking claim occurred... ...of the government putting the land in trust. Then that's your...I think you're saying that the taking occurred then, right? No, that was the action that caused the taking. And what is the taking then? The taking is the construction of the property which resulted... This is my problem here. The government's action seems to be indirect, right? It's indirect. There's something else that happened in the building of the casino in which the tribe was not the government's agent, right? That's where the flooding occurred. Right. So what I'm saying is, if I think of the claim as you're saying it now, which is that the flooding is the natural cause of putting the land in trust. Everybody should have known that that's what would have happened. Then why wouldn't you have known it? And why wouldn't your taking claim have arisen at that time? Well, it very well, as your Honor, reframed the issue. No, I thought that was your argument. I don't mean to reframe your argument by any means. So if I'm saying your argument wrong, please correct me. Well, I think we're getting on the right path. I think Ms. Berry has identified the government action. And then the next question is, if you look at the briefing that's occurred, in the lower court, there was a lot of discussion about whether it was action or inaction. But if you look at the briefing here, really the question is, was that action, was the taking the direct, natural, and probable result? And what I'd like to implore the court is to think about, this is a 12B6 motion. And I think the court could have made the decision that the taking of the property into trust was not the direct, natural, or probable result. But that decision should have been made after the record was developed, there was discovery. I think if you look at the cases briefed, the cases cited in this particular case, St. Bernard's is one, Ridgeline is another case. Where there are cases where it turns on whether an action or a taking was a direct, natural, or probable result, you'll see that all of those cases were not disposed of on a motion to dismiss. Those cases were disposed of after a bench trial, on summary judgment. The cases are replete with discussions about flooding cases are intensely factual type cases. And so what we're asking this court to do is to reverse and remand to the court to order the government to answer the case so we can develop the record and the court can go through this intensely factual analysis to determine whether the approval of taking the land into trust and the construction of this behemoth casino next to my property and the resultant flooding was the result. Did some of the flooding occur in 2016? Not to my knowledge. I guess what I'm trying to understand is what was the allegation in what I believe is paragraph 20 on appendix page 35? What was the appendix page? 35. 35. I think it's paragraph 20. Okay. I was just trying to understand what you meant by that. I was maybe misreading but trying to read it accurately and it looked like you were talking about something that occurred in 2016 including potentially some flooding in 2016. That is an allegation in the complaint and there was discussion at the hearing about whether construction had actually occurred and started before the government had approved taking the land in trust. And I don't have any reason to doubt that there was construction that began prior to 2016. But that's another reason why we can't dispose of this here. I don't know the answer as to what the nature of the construction was, whether that construction was related to something else. These are facts that need to be developed in the record before the court can make the determination that the government action was not the direct, natural, and probable cause of the flooding. It looks like I've got rebuttal time left so I'd like to reserve my time after my opponent speaks. Thank you. Okay. Thank you, Mr. Buck. Ms. Hanson-Young. Okay. Good morning, Your Honors. May it please the court, my name is Tekla Hanson-Young and I represent the United States. The problem with Ms. Berry's claim here is that the facts that she has alleged, a crucial part of which is in paragraph 20 on page 35, which was discussed earlier, do not show two basic elements of a takings claim. First, she hasn't shown either that flooding was caused by an affirmative action of the United States or that the flooding was the intended or the direct, natural, and probable cause of the government's action. The real actions that she complains of are all actions that were taken exclusively by the Cherokee Nation, which act as an intervening cause consistent with this court's decision in the Kerry case that would remove... Okay, so I'm trying to understand what is the meaning of when the government takes the land in your trust. Sure. And then what is the government's responsibility at that time? Is it kind of like you buy this thing, including all benefits and liabilities that come with this thing? No, absolutely not. So what happens when the government takes land into trust for a tribe is that the legal ownership changes. So the United States holds legal title to the property, but the Cherokee Nation here controls the use of the property with certain limitations. For example, the Cherokee can't alienate the property again. It's held by the United States. But the Cherokee retained exclusive control over how to develop its property here. The United States did not direct it to build a gaming facility. It didn't approve the development of a gaming facility. It didn't review or approve building plans. If the government did something like a landlord of the property, is the landlord somehow responsible for what the tenant is up to on the property? No. Even if it were more akin to a landlord-tenant relationship, our position would be no. The landlord wouldn't be liable for the takings that the tenant had caused, and that would be more of a tort action, which wouldn't fall under a takings claim in any event. But here, what the government did when it took land into trust is that... The reason why it might seem a little odd here is because the government looked at the purpose for which the Cherokee Nation was proposing to use the land as part of the government's compliance with the Indian Reorganization Act, which grants the government statutory authority to take land into trust. And the government also evaluated the potential foreseeable environmental impacts of the proposed use under the National Environmental Policy Act. But neither of those two statutes impose a statutory duty on the United States to ensure, one, to protect a third party's property, or two, to ensure that development is occurring in a way that wouldn't damage or take another party's property. Then what's the purpose of the environmental assessment at all? The purpose of the environmental assessment, NEPA, the National Environmental Policy Act, is purely a procedural statute. The purpose is to allow the government to be informed of the potential environmental impacts of an action before it takes the action, and to inform the public of the potential environmental impacts to make sure the government makes a fully informed decision concerning... The environmental assessment was of the casino itself, and what would happen to the land? Yes. The government separately conducted an environmental assessment of the Cherokees' proposed use of the land, the casino, the gaming facility, and looked at potential environmental impacts. And a letter discussing that environmental assessment was included in the record. It was cited by Ms. Berry's amended complaint, and that letter, in fact, did state that the proposed development could result in potential surface flow. It didn't state that it would necessarily result in the flooding of neighboring property. And it also went on to state that mitigation measures were being implemented to ensure that there would be no changes beyond what was currently taking place. So there were detention ponds that were supposed to be built in the property, there were best construction practices, stormwater mitigation measures that were put into place, and the government considered all of those elements of the Cherokee Nation's proposal before it ultimately decided to take the land into trust, which is the only affirmative action that Ms. Berry has pointed to that the government has done here. Now, that is far removed from the direct actions that she complains of that caused the flooding. And specifically, her complaint says, since the beneficiary, that's the nation, this is on page 35, paragraph 20, the second sentence, since the beneficiary commenced construction in 2016, diverted water has substantially interfered with plaintiff's use of her real property by flooding several acres continuously and diminishing the usability and value of said real property, as well as adversely affecting her remaining real property. And then in a previous paragraph, paragraph 11 on page 33, she specifically lists the date that the government took the land into trust, which was January 19, 2017. So even if you assume, which the CFC had to do on a motion to dismiss, that all of the facts alleged in her complaint are true, under her facts as alleged, the government's decision to take land into trust occurred after the Cherokee started construction on the site and caused flooding of her property, the flooding that she has complained of here. So there's no need to remand for further factual development or permit further factual development, because assuming these facts are true, she cannot establish that the United States' decision to take the land into trust caused the flooding. What's your response to this quasi-agency theory that I heard before? Sure. As an initial matter, this argument has been forfeited because it was not raised, it wasn't alleged in the complaint, it hasn't been raised up until the reply brief. But to the extent the court is interested to show an agency relationship under this court's decision in A&D Auto Sales, and there's another decision that is useful, that is along the, that has cited to A&D Auto Sales, it's the Welty v. United States at 926 F. 3rd, 1319, that we didn't discuss in the brief, but the facts are fairly similar here. A party is an agent of the United States if it is hired or granted legal authority to carry out its business. That's the A&D Auto Sales case at page 1154. Here, there have been no allegations that the Cherokee Nation has either been hired by the United States or granted legal authority to carry out the business of the United States in constructing the gaming facility. And what's more troubling about these allegations is that, or this new argument that's been raised in the reply brief, that there's some sort of quasi-agency relationship here is that there's no statutory authority for that argument. There's no actual legal hook that would allow the court to premise a takings claim on this purported agency relationship. between the United States and the Cherokee Nation. And if you look at this line of cases, and not directly on point here, but if you look at this court's line of cases, the Navajo Nation line of cases where a tribe comes in and asserts that the United States has breached a trust duty to the tribe and therefore must pay damages. All of those cases depend on the existence of a specific statutory or regulatory obligation that the United States owes to the tribe and that creates the legal hook for liability for the United States. There must always be a statute. And here, we don't have such a thing. And in any event, any kind of benefit or any kind of legal duty owed would run from the United States to the tribe, not to a third party, Miss Barry. So my first answer would be that argument is forfeited, and secondly, it also has no merit. I just want to get back to the causation issue. Just briefly, I think that the court's Kerry decision is really helpful here. And in that case, the government had authorized, so a private landowner brought a takings claim against the United States, alleging that fire had taken property and that the government's fire suppression policies and recreational use policies on forest service land had resulted in a situation where there was flammable material on the ground, a hunter came, smoked, set a fire, and that caused the taking. The court here said, even assuming that the government knew the possibility that there would be a fire and that its recreational policies and fire suppression policies increased the risk of fire, that there was no taking because there was an intervening cause. The Hunter's Act was the intervening cause here and broke the chain of causation as a legal matter. And so similarly here, the Cherokee's decision to construct the facility in the manner that it did, the Cherokee's decision to send its agents or its representatives onto the plaintiff's property to build a drainage ditch, which are allegations in her complaint, those were all decisions of the Cherokee Nation, not the United States, and there are no allegations in the complaint that the United States directed the Cherokee Nation to do those things. I also just briefly wanted to touch on a question that Judge Chen-Yu asked about remedy here. There was a lawsuit brought by Ms. Berry against the Cherokee Nation and the United States in the Eastern District of Oklahoma in 2020, or maybe in 2021, but it was brought in 2020, but it was voluntarily dismissed a few months later. There is no information in the docket about why. And then shortly thereafter, this suit was filed in the CFC simply against the United States. So I think what could be troubling is what is her remedy if there is some damage here that's occurring to her property? What's the answer? Well, it's hard for me to speculate on what her remedies might be, but I have done some thinking about this. And I just first want to say, even though I've invited this question myself, you know, the lack of a remedy here wouldn't factor into this court's decision that she could bring a takings claim against the United States. But setting that aside, my understanding is that she is a citizen of the Cherokee Nation. And my friend, Mr. Lepp, can speak to that potentially. But there may be some political or administrative remedy with the Cherokee Nation that she could pursue through the courts there or the Tribal Council or the Cherokee Nation's Environmental Protection Commission. Even if she's not a citizen, she may have some recourse with the Cherokee Nation directly. And because we don't know, because that suit that she brought in the Eastern District of Oklahoma never was, you know, litigated or ultimately dismissed. Wouldn't the sovereign immunity lock her out, though, from that Eastern District of Oklahoma action? Presumably, but that issue was never briefed. No court has ever ruled on that in that specific context. And so it's hard to speculate. I mean, I would think so, but I can't say definitively because that issue has never been ruled on by a court in her factual circumstance. So as far as we know, there's no court cause of action that you can think of? Not in the federal courts. I mean, if she, for a takings claim, I mean, we could go further afield. What about for a non-takings claim? Potentially. And she could bring a claim under the Administrative Procedure Act challenging the government's decision to take the land into trust. That wouldn't result in monetary compensation for her, and it wouldn't necessarily get at the crux of her complaint, which is that the Cherokees Nation development and construction has caused flooding on her property. And I would also like to point out that the Cherokee Nation owned the property in fee before the government took it into trust. And that's why the nation started building on the site, because it owned the property. And so irrespective of whether the government owned the land in trust or not, the Cherokee could and did in fact start building on its site and causing the flooding that she alleges to have occurred here. So it's, you know, there may be some remedy for her outside of a takings claim in the CFC, but this particular remedy is not available to her on the facts that she has alleged. And unless the court has any further questions, I would ask the court to affirm the judgment of the CFC. Thank you. Thank you for additional time, Your Honor. I'd like to address some of these. One, I thought it was interesting. Can you address her point about a possible remedy outside of the federal courts? Sure. OK. Well, I don't believe there is a remedy outside of federal courts. I know there was discussion about Ms. Berry being a citizen of the Cherokee Nation, and maybe she could go and talk to somebody. I can tell you that's not in the record. But I know for a fact she has talked to everybody, including the chief, about some satisfaction. So I was at her council when this Eastern District lawsuit of Oklahoma lawsuit was filed. Frankly, it was the first I've heard of it. I was sitting there right there. But it's my understanding that she exhausted every remedy that she had before she brought this claim with the Court of Federal Claims. And as far as the APA claim, again, I'm not sure there would have been an APA claim. One, if you look at the letter taking the land into trust, it makes it effective immediately. There's no evidence of any notice of appeal rights or anything along those lines. But as opposing counsel indicated, the crux of the matter is her land has been rendered unusable by the development of the casino. And so I want to get back to the issue that I hope I leave you with, is that there are still facts that need to be developed. And let me talk about some of these facts. There was an allegation that construction had happened in 2016 prior to the January 2017 decision to take the land into trust. I know from reading the transcript of the hearing that prior counsel for Ms. Berry believes on good basis that there was a verbal approval from the BIA that, yes, we are going to approve this. And the Cherokee Nation very well may have jumped the gun. But that's something that I think still needs to be explored that can address that issue. And I also want to focus on something that counsel said that I forgot to highlight, but she did that for me, that I think we really need to look at the totality of facts here on what happened. We have the government coming in, analyzing the design plans for the casino, looking into the environmental impacts. And in doing that, in the EA, the environmental assessment, they did state that the construction of this behemoth was going to increase the amount of impervious surfaces, mainly asphalt, surfaces where water can't seep into the ground. And the government says, well, look, that's going to increase the surface flow rates on the property. It looks like they're going to have to do some stormwater detention to prevent the flooding. So clearly, government knew of the potential, and I would say the probability, that there was going to be flooding. So if the government approved this, took the land into title, and as Judge Chin mentioned, how is that any different than a landlord-tenant situation? I would say it's not much different. The government owns the property, holds it in title. The Cherokee Nation is the beneficiary of this trust relationship. The government comes in, looks at everything, and says, yes, build this casino, build these stormwater detention plans. And in furtherance of a public objective, which is the self-sufficiency of Indian tribes in America. And we believe, it's our opinion, that when the court, when we get back and we do discovery and the court looks at all the facts, that there will be a finding that the flooding was the direct, natural, and probable result of that decision. And so we would ask this court to reverse and remand, order the government to answer the lawsuit. We go through the process. If the government wants to move for summary judgment and I can't meet my burden, then we will have gotten our day in court. But to deny, or to grant a motion to dismiss at this stage, we believe is reversible. Thank you for your time. Thank you, Mr. Miller. We thank the attorneys and the cases submitted. That concludes today's arguments.